and Nancy Cokinis, not Helen Skolop, but Helen, by Bradford Bennett. Good afternoon, your honors. May it please the court, counsel. My name is Brad Bennett, and I am the attorney for the Helen Nancy Skolop, formerly known as Cokinis. And when Nancy and her ex-husband Joseph Cokinis were divorced in 2011, she was entitled to 50% of the marital portion of his pension that he earned as a police officer for the city of Irwin. Now, the issue on appeal is if Ms. Cokinis is also entitled to disability benefits that Mr. Cokinis now obtains as a result of an injury from that same pension with the city of Irwin. Now, the parties were divorced in 2011. They entered a quill row to divide the pension as it relates to an importance with the judgment in 2012, but a quill row cannot divide disability benefits. And Mr. Cokinis was found disabled by the pension board in November of 2016, and at that time he was 49 years old, and he had 23 years of credible service with the police department. Now, he was first eligible to retire when he turned age 50, so Ms. Cokinis filed a motion to enforce the judgment for disillusion of marriage in April of 2017, and in Mr. Cokinis' response, he does admit that Nancy is entitled to a portion of the disability benefits, but not when he's first eligible to retire at age 50, that she's entitled to those disability benefits when he would have retired had he not become disabled. And pursuant to that response, as well as Mr. Cokinis' brief, he alleges that he would have retired with 30 years of credible service on the police force, which would be 2024, because it would have entitled him to 75% of his salary, which would have been the maximum. So, because, look, if he wasn't disabled, and she's not getting maintenance, nothing else, but she gets part of his retirement, can she force him to retire at his first retirement age? No. So, just because there's disability benefits wrapped up in this, how does that change that, basically force him to retire before he wants to? Well, based on the 3rd District's case of integrated marriage insurance from 2008, which follows a long list of cases involving the 4th District and, I believe, permanently the 1st District, once he becomes eligible to retire, then, in this case, Mrs. Cokinis would be eligible to receive the meritorious portion of those disability benefits. And that's because Berwyn, a city of under 500,000 people, that pension, that police pension, is governed by Article 3 of the Pension Code. And Article 3 basically awards police officers two pensions, a retirement pension and a disability pension. What I mean by that is Mr. Cokinis could stay or could continue to receive disability benefits indefinitely. He would never be forced to retire and take benefits from a retirement benefit. In a sense, that would cause Mrs. Cokinis to get nothing. She was entitled to 50% of the meritorious portion during her 21-year marriage. So if we were to look at the intent of the parties at the time that they were divorced, we first look to see if their judgment was clear and unambiguous or whether it was ambiguous. And pursuant to Schertz, pursuant to the 4th District case of Benson in 2015, even if Meryl Sudden's case does not mention disability benefits and the only reference of pension in terms of retirement benefits, those cases found that language to be ambiguous. So turning to the intent of the parties, looking outside of the document, we look at the rest of the document to determine whether it was reasonable, rational, and probable that at the time of the divorce, Nancy would have waived her right to receive disability pension benefits had Joseph become disabled. And naturally, in all of the cases that I cited in my brief, none of the marital settlement agreements ever apportion a disability pension benefit in this context where the person is not disabled. This is Schertz, a firefighter? Yes. And isn't that code different? Yes. No, participant's code. He was a firefighter, I believe, in a town of under 500,000 people. His firefighter pension was governed by Article 4 of the pension code, and just like Article 3, it divided his pension into retirement benefits and disability benefits. So when Schertz, the third district, recognized the fact that he, just like Mr. Cotenas, would never have to, quote unquote, retire and draw from his retirement benefits, which would leave his spouse to receive nothing. The difference with Schertz is that at the time, he was eligible to retire. In this case, Mr. Cotenas became eligible shortly within a year of him becoming disabled. And Article 4, I believe that is Ingrate the Marriage of Schertz, which distinguished that. Ingrate the Marriage of Benson, that fourth district case, which heavily cites Schertz. The pension governed by Article 4 basically is identical to the pension that's governed by Article 3. But isn't your problem that in this case, at the time he was injured, he couldn't nominate to take the pension as opposed to disability? Correct. So, I mean, Schertz and the other case, Benson, aren't those cases all at the time of the injury that the individual was eligible for the benefit? Correct. But, and I forget which cases, but in both cases, they awarded retroactive amounts as it relates to the disability pension. I might have been getting them flipped, but one was $115,000. Another was $40,000. I mean, in these cases, the spouses waited a substantial amount of time before they filed a motion to enforce to receive their portion of the disability benefits. But pursuant to Schertz and Benson, I believe the requirement is just eligible. So, because he's now eligible to draw from these retirement benefits, then we believe that Mrs. Proteinus also does now have a right to receive her marital portion of those benefits. I thought that the Bourbon City Code required Opelous to retire at 65. Am I wrong? So that, yes, I believe Mr. Proteinus would be required to retire at age 63 pursuant to the city ordinance as well. Age 63. But the code, Article 3, as well as Article 4, there is no compulsory retirement where they would force their member to draw from retirement benefits. In the most recent case I cite, which came out of the 1st District in 2017, Farrell v. Howe, the 1st District does a good job of kind of walking us through all of the cases that have really addressed this issue. And the difference there, that was also a firefighter, but obviously, well, he was a firefighter for the City of Chicago, obviously a municipality of over half a million people. So his pension was governed by Article 6 of the pension code. And Article 6 does have compulsory retirement. So when I mentioned that Article 3 really offers two benefits, which I should say that is from Belk, I believe. Belk has been cited in some other cases that I've cited. Article 6 does not offer two benefits. And Farrell v. Howe case goes through that. So because there's compulsory retirement, if Mr. Popinas was in a town of over 500,000 people, he would be required to take retirement benefits at the compulsory age of retirement. So he could not preclude his ex-wife from receiving retirement benefits. Well, let's talk about the real world for just a second. So what percent of his salary is he getting in disability benefit? 65%. And he's not yet attained the years where he would get to 75. And ultimately, he'd get to the point where he'd get 75% of his salary as a retirement benefit as opposed to a disability, correct? Yes, he'd get 30 years. And that's why people put off collecting Social Security and all this stuff to get a higher benefit and all that. But then, so once you've reached that stage and he says, yeah, I'm going to keep taking, if he can, I'll keep taking my disability because 100% of 65% is more than, let's just say, 50% or 60% of 75%, I'll come out ahead if I do that. It seems like then there's a stronger argument for somebody who's working and trying to build up their pension. And then at the end of the day, depending on how long they both live, conceivably, if you wait until this fellow reaches maximum retirement age, hypothetically, your client could even recover more money over the course of their lifespan than if she starts getting it now. And I understand your point. So once he chooses to get those retirement benefits, and let's say it's 2024, and he maxes out at 75%, I mean, I don't know the math at that time, but a large portion of that would immediately go to Nancy pursuant to the GILDRA. So, you know, him saying he plans to retire to max out his benefit, he's forgetting that a large portion of those are marital and pursuant to the judgment, Nancy gets 50%. Well, okay, but then we'd have a different case, right? If he got to that stage and decides, hey, you know what? I changed my mind. I'm not required to retire even though I've maxed out on my pension and I'm going to keep drawing disability. At that stage, we'd have a different case. Understood. And so when Mr. Kokienis turned 50, I believe he had 24 years of credible service. And at 20 years, you get 50%, and every year above that, you get an additional 2.5%. So I believe he's at 24 years, so he's at 60%. So in two years' time, he's going to match his disability benefits. So Mr. Kokienis, his argument is how can I get more money? I mean, he's going to match his disability benefit in two years, not in 2024. But looking at the real-world application of this is that at the time of the divorce, Mr. Kokienis was a police officer for Burbank. He was also a manager of a restaurant, and I believe in the judgment, it listed his gross income at that time. Ms. Kokienis was unemployed at the time of the judgment. And if we're looking at the intent of the parties as it relates to enforcing this judgment for dissolution of marriage, and fast-forwarding today, Mr. Kokienis is still manager of that very same restaurant. And I know there's a benefit to maxing out on detention, but I do believe that individuals, once they reach that 20-year threshold with their municipal worker or police officer or firefighter or judge, they may decide to retire, quote-unquote, at that time and begin drawing from their pension. But it may not mean that they're literally retiring, where they're not going to find any sort of subsequent employment. So Mr. Kokienis is a manager of a restaurant, drawing disability pension benefits. I don't see anything stopping him from having a third source of income. But at the time, just a month prior to his injury, the maintenance, which was reviewable after five years, had been reviewed, and it was terminated. So without the injury, he could have had four or five or six jobs, and she wouldn't have been entitled to that, nor would she have been able to tell him, you have to take early retirement. Right? I mean, she would have got nothing. I mean, she's in, you know, no different position right now than she would have been if he had been injured. Correct? If he would have remained employed as a police officer – and I understand your question. I mean, it's very subjective. I mean, he has pled that it was the intent at the time of the divorce that he was going to work for 30 years. But again, I mean, who's to say that he was or wasn't? I mean, if we look to the intents of the parties at the time of the divorce, because that provision that divides the retirement benefits, I believe is ambiguous, following the case law that I cited. Therefore, we can look to the intents of the parties, and we look to their employment or lack thereof. I don't – I think the law is relatively clear, isn't it, that if you have a statement that I currently intend to do something 30 years from now is not some kind of contractual promise. Sure. And it's changed. So – but Your Honor, you are all correct. The difference in insurance in this case is that he became injured just before he was eligible to retire. But I do believe the case law does state that the eligibility is the demarcation where once he's eligible, then she is entitled to the marital portion of those benefits. As it relates to the equity of this, there is nothing preventing, again, Mr. Botinis from ever drawing his attention. It is different from the First District case, which is Article VI. It is more in line with the two firefighter cases, Schertz and Benson, which make that difference that because there's no requirement to ever retire, he can, in a sense, cut off Mrs. Botinis forever. No one can – But again, isn't that true with the Bergen city code? I mean, it does require someone, a policeman, in Bergen to retire at 65. That is the city ordinance. That is literally – the officer would have to stop being a police officer pursuant to the city ordinance. But there's no compulsory age that the police officer, if they're drawing on disability, would have to, quote-unquote, retire and receive retirement benefits in Article III, in Article IV of the pension code. But does it matter where the compulsion is coming from, whether it's the Berlin city council or the pension code? It seems to me at 65, he's done drawing disability benefits in Berlin. I don't believe so. I believe pursuant to the pension code – and this was the same in Schertz and Benson, which was Article IV – and I could quote those cases that they make mention that there's no requirement. They could literally stay on – receive disability benefits indefinitely, well after the ordinance would otherwise force them to retire as a police officer. The Article VI references the city of Chicago – well, I believe in the city of Chicago – references and says once there is a compulsory age to retire as, in that case, a firefighter, then you have to stop drawing disability benefits. You have to draw on retirement benefits. And that language is not mirrored in Article III, not mirrored in Article IV. And I believe that was the distinction that the courts made in Schertz and Benson. And also the distinction that they made in Farrell v. Powell in talking about how Article VI was a lot different. Because in that case, they ruled that the ex-wife could not receive disability benefits from her ex-husband because he would be forced to draw upon those retirement benefits at an age certain, which is not age certain. Thank you. Mr. Goggin. Thank you, Your Honor. I'm Terry Goggin. I'm here after a joke. I may have pleased the court, but it's our position that if you interpret – first of all, we don't agree that there's any ambiguity in marital settlement. Both parties were represented by Abel's counsel at the time. It's very fact-specific in terms of the property to divide up. It also divides up both the assets and the liabilities disproportionately in favor of Mrs. Cookings, now Mrs. Scola. I believe it was 60-40. In order to determine the intent of the parties, we have to go back to that point. And if we follow counsel's argument, Mr. Cookings at that time went on disability. There's a 50% division of the marital portion of his pension. When he went on disability, he was entitled to – he had 65% of his salary. If he were to take his pension at that point, he would get 50% of his income with the amount of years of service he had. Half of that would go to Mrs. Cookings. That would be 25%. At the time, Mr. Cookings had child support payments for three minor children. He had a maintenance obligation to pay, and he would be essentially destitute. And it's unreasonable for counsel to argue that that was what the parties intended at the time they entered into the marital settlement agreement. In terms of our understanding of the village ordinance, the law in Berwyn and set out in Appendix 82 of Mr. Bennett's brief, is that police officers and firefighters must retire at age 65. Mr. Cookings maxes out at 30 years in 2024. As the court pointed out, if they come back to court at that time, it's an entirely different case, because then he is in the position of the firefighter insurance, who was eligible at the time of the divorce. Unlike here, he was eligible both for full pension and full disability pass. We don't have it here. A man is still on disability, and he's been on disability for a number of years. I don't think this court can determine that the intent of the parties at the time they entered the marital settlement agreement was to reach an unreasonable result such that Mr. Cookings would essentially get 25% of the income he was earning as a police officer. I think the fact that the case law supports the fact that there is no distinction in the marital settlement agreement that was negotiated through counsel for both parties between retirement income and disability income, the absence of any reference to disability means just that fact. The parties did not intend disability to stand in for maintenance, retirement, or any other form of payment for Mrs. Cookings. The court had a question regarding heroin at age 65. If we go to that, it's pretty clear that under no event can a police officer or firefighter be on active duty beyond age 65. Mr. Cookings maxes out at 24 at 30 years. I think the only reasonable, rational, and probable result of the marital settlement agreement was that the parties at 41 years old, and I think Mrs. Cookings was 39, intended that Mr. Cookings would continue to work for his full work life as a sworn officer in Berlin. Putting his 30 years, which would put him at 20-24, and after the retirement, she gets her kill-throw benefits. There's no question that she's entitled to those. She's just not entitled to them now. What he is receiving is income replacement, not anything differently. And if she had an opportunity to continue maintenance, there was a hearing, her periodic maintenance was terminated following that hearing, I think the inference that could be drawn from that that hasn't been raised is that she's fully employed and employed for, and that she's well able to continue to support herself. Granting her a portion of his disability now would result in a windfall, because it's something she'd been contracted for, and it's something she wouldn't otherwise be entitled to unless, or rather until, Mr. Cookings reaches full retirement age. I think our briefs call out the remainder of our arguments, unless the court has any questions. Thank you. Thank you, sir. Mr. Bennett, do you have a rebuttal? Yes, Your Honor.  So it appears that Mr. Cookings believes that his ex-wife would be entitled to a portion of his disability benefits should he continue to draw upon those benefits after 20-24, after he would have otherwise maxed out his retirement. And again, I believe that that is subjective, just as if they assert that he would, his intent was never to retire at age 50. Who's to say that he would, wouldn't have worked to age 65? They're asking this court. I think that's what he is saying, is that if he had worked, or if he continues and now needs to receive disability payments at age 65 and beyond, then there's no question that Mrs. Cookiness is entitled to a mere portion of those benefits from that age forward. So I think the counsel did say that. So I don't, I mean, I think they're saying is that at the point where he is eligible for retirement and not eligible to be a full-time officer of Irwin, that that's when her right to receive that benefit kicks in. Understood. Then I really failed to see the reason behind their argument as it relates to that he would have intended to retire in 20-24, because I don't believe he would have been age 65 at that time. So the argument as to when Mr. Cookiness would retire, I do believe is moot. Well, if he had been drawn a salary, he's still out driving around in a police car eight or 16 hours a day, and he's drawn a salary, as opposed to disability benefits. Why? Because he's disabled. Does that put your client in a better position to get some of his money now, as opposed to when he retires? And if he refuses to retire after he's maxed out his benefits, then you have a different argument. But for right now, I can understand how your client is prejudiced when, by his not retiring, when under the normal course of events that he had not been disabled, we assume he's able-bodied, had that many years on the police department, he's still going to be doing that. I can understand that point. I do believe, as it relates to, and I know I keep repeating the same cases, Benson out of the 4th District and Schertz out of the 3rd District, that neither one of those individuals, both firefighters, both government or the courts, none of them were at or past the mandatory retirement age for the organs of whatever town that they were in. And in those cases, both courts did order retroactive awards. I'm not certain that there was a mandatory retirement age in those cases. There was an ordinance in both of those cases as it relates to when they were a firefighter, they would have to retire. And in both of those cases, the ex-wife was able to receive a portion of their disability benefits. I understand the point that if he keeps disability beyond the ordinance when he would otherwise have to retire, but I believe that that is counter to the case law that I've cited, and that as it relates to Article 3 and as it relates to Article 4, the individual does not have to meet the maximum retirement age. Let me ask this. At the time of the divorce, they agreed, and your client agreed, and everybody agreed, and there was a quota order that when he retires, then I get this percentage of whatever it is, of his pension. And they did that, knowing full well that there was no mandatory retirement age, or if there was, it was 63. So how old is he now? Okay. So clearly at the time of his divorce, your client wasn't looking at getting any retirement benefits from Mr. Katsinas when he was age 51. Well, I don't think, and I believe one of the cases I cited is to say it wasn't contemplated when someone retired. Mr. Katsinas, obviously, if he decided to retire today, he should be entitled to those benefits. But there is no language, I don't even believe the judgment says when he retires. I don't believe it was ever contemplated when he would retire, and it definitely doesn't state that he should be entitled to those benefits if he were to exceed the maximum age of retirement. Well, generally it's understood, well, when he collects them, I get mine. When that's distributed, check those to me and check those to him. So if you agree it wasn't contemplated, then you've got to think, well, gee, there must be some injustice here to require the court to intervene and give her some money right now out of his thing. So explain to me what the injustice is. Well, the injustice is that he never has to draw upon the retirement benefits. I understand that the court has indicated that once he reaches the 65, pursuant to Irwin, when he would otherwise retire, that she might be entitled to those benefits, but he doesn't have to draw upon those benefits. And you knew that? And she knew that when she signed that divorce decree, that he didn't have to retire. Wasn't that the law then, too? Well, your Honor, out of the cases I cite, I believe, I mean, they were divorced in 11, and insurance came out in 08, and... As far as police retirement, he could retire whenever work was... Oh, if he was working, yeah. Become a deputy chief or something, go set up in an office and work until he dies. Well, I mean, pursuing, he was eligible to retire from age 50 all the way to, again, age 65. So in this window, he had 15 years to retire, because he was already eligible when he was age 50. And opposing counsel would like her to be entitled, obviously, at the end, and we're arguing that once he's eligible, she becomes entitled to it. And we believe that that simply mirrors the previous case law that states as much. Thank you. Thank you. Thank you both for your arguments here this afternoon. This matter will be taken under advisement. Written disposition will be issued.